## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| (1) TRUDY FERRELL, Individually and as Personal Representative of the ESTATE OF GREGORY FERRELL, deceased, | ) ) ) | |
| | ) | |
| Plaintiff, | ) | |
| vs. | ) | Case No. CIV-15-404-D |
| | ) | |
| (1) BGF GLOBAL, LLC; (2) LAWRANCE DILDINE, individually; | ) ) | |
| | ) | |
| Defendants. | ) | |

## PLAINTIFF'S OBJECTION AND RESPONSE TO DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT <u>WITH RESPECT TO CERTAIN DAMAGES</u>

May 30, 2017

Respectfully submitted,

 s/ Andy J. Campbell
L. Ray Maples, II, OBA #18586
Glendell D. Nix, OBA #13747
Nicole R. Snapp-Holloway, OBA #18472
Andy J. Campbell, OBA #30512
**MAPLES, NIX & DIESSELHORST, PLLC**
15401 N. May Avenue
Edmond, Oklahoma 73013
T:  (405) 509-2000
F:  (405) 513-5005
ray@mndlawfirm.com
glendell@mndlawfirm.com
nicole@mndlawfirm.com
andy@mndlawfirm.com
**ATTORNEYS FOR PLAINTIFF**

# INDEX

**Table of Authorities**      ii-iii

I.     **Introduction**      **2**

II.    **Plaintiff's Response to Defendants' Statement of Undisputed Facts**    **3**

III.   **Plaintiff's Additional Facts Precluding Summary Judgment**    **4**

IV.   **Argument and Authority**      **7**

     A.   **The Standard for Summary Judgment**      **7**

     B.   **Plaintiff will Not Present Evidence or Testimony Supporting a**    **8**
         **Economic/Pecuniary Damages Claim**

     C.   **There is Evidence from Which a Jury Could Conclude That**    **9**
         **Decedent Gregory Ferrell Suffered Conscious Pain and Suffering**
         **Before and Following the Crash**

     D.   **Decedent's Parents Maintain Claims for Damages Permissible**    **13**
         **Under Oklahoma Law**

     E.   **Plaintiff Will Present Evidence That Supports a Jury Instruction**   **14**
         **on Punitive Damages**

V.     **Conclusion**      **18**

**Certificate of Service**      **19**

# <u>TABLE OF AUTHORITIES</u>

## United States Supreme Court Cases

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)........................................................................xi

*Reeves v. Sanderson Plumbing Prod., Inc.,* 530 U.S. 133, 151 (2000).......................................................xi


## Circuit Courts of Appeal Cases

*Haley v. Pan Am. World Airways, Inc.*, 746 F.2d 311, 314-15 (5th Cir. 1984) ......................................xv

*Plotke v. White*, 405 F.3d 1092, 1093-94 &1103 (10thCir., 2005) .............................................................xi

*Stinnett v. Safeway, Inc.*, 337 F.3d 1213, 1216 (10th Cir. 2003).................................................................x

*Trainor v. Apollo Metal Specialties, Inc.,* 318 F.3d 976, 979 (10th Cir.2003)............................................xi


## Federal Rules

Fed.R.Civ.Proc. 56...........................................................................................................................iv, x


## Oklahoma Supreme Court Cases

*Graham v. Keuchel,* 1993 OK 6, 847 P.2d 342..........................................................................................xx

*Hightower v. Kansas City S. Railroad Co.*, 2003 OK 45, ¶ 38 n. 28, 70 P.3d 835................................xviii

*Kraszewski v. Baptist Medical Center of Oklahoma, Inc.*, 1996 OK 141, 916 P.2d 241, 247 ...............xiv

*Oden v. Russell*, 1952 OK 414, 251 P.2d 184).........................................................................................xix

*Slocum v. Phillips Petroleum Co.*, 1983 OK 112, ¶ 17, 678 P.2d 716 ......................................................xix


## Oklahoma Courts of Appeal Cases

*Floyd v. Dodson*, 1984 OK CIV APP 57, ¶ 15, 692 P.2d 77.....................................................................xix

*Maldonado v. City of Altus,* 433 F.3d 1294, 1301 (10th Cir.2006) .............................................................x

*OShea v. Yellow Tech. Servs, Inc.*, 185 F.3d 1093, 1096 (10th Cir.1999) ..................................................x

*Scribner v. Hillcrest Medical Center*, 1992 OK CIV APP 117, ¶ 12, 866 P.2d 437 ...............................xix

*Shuman v. Laverne Farmers Coop*, 1991 OK CIV APP 2, 809 P.2d 76 ...................................................xix

## Oklahoma State Statutes

23 Okla. Stat. tit. § 9.1 ..........................................................................................................xix, xxi

Okla. Stat. tit. 12 § 1053 ..........................................................................................................passim

## Other State Court Cases

***Beynon v. Montgomery Cablevision Ltd. P'ship***, 351 Md. 460, 504, 718 A.2d 1161, 1183 (1998)........xiv

***Monk v. Dial***, 212 Ga. App. 362, 441 S.E.2d 857 (1994) ........................................................................xv

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

(1) TRUDY FERRELL, Individually and as     )
Personal Representative of the ESTATE OF     )
GREGORY FERRELL, deceased,     )
    )
                   Plaintiff,     )
vs.     )    Case No. CIV-15-404-D
    )
(1) BGF GLOBAL, LLC;     )
(2) LAWRANCE DILDINE, individually;     )
    )
                   Defendants.     )

## PLAINTIFF'S OBJECTION AND RESPONSE TO DEFENDANTS'
## MOTION FOR PARTIAL SUMMARY JUDGMENT
## WITH RESPECT TO CERTAIN DAMAGES

COMES NOW the Plaintiff, TRUDY FERRELL, Individually and as Personal Representative of the ESTATE OF GREGORY FERRELL, deceased, and pursuant to Fed.R.Civ.Proc. 56{ TA \l "Fed.R.Civ.Proc. 56" \s "Fed.R.Civ.Proc. 56" \c 4 } hereby submits the following objection and response to Defendants' Motion for Partial Summary Judgment with Respect to Certain Damages [Doc No. 103][1]. In support of this objection and response, Plaintiff shows the Court the following:

_____

[1] On May 9, 2017, Plaintiff filed a Motion to Strike Defendants' Second Motion for Partial Summary Judgment [Doc No. 106], as Defendant BGF Global filed a second Motion for Summary Judgment without obtaining leave of court in violation of Local Rule 56.1(a). As such, Plaintiff respectfully requests Defendants' Second Motion for Partial Summary Judgment be stricken. Because no order has been entered as of the response date, Plaintiff submits this response in an abundance of caution.

# I.     Introduction

This case arises from a vehicle collision on or about November 25, 2014 wherein Defendant Dildine, an employee of Defendant BGF Global, LLC, was driving a tractor trailer and struck the vehicle driven by Plaintiff's decedent, Gregory Ferrell, killing Mr. Ferrell.  The collision occurred at the intersection of SE 15th Street and Eastern Avenue in Oklahoma City.  At the time of his death, Mr. Ferrell was married to Trudy Ferrell, the personal representative of his estate. Additionally, Mr. Ferrell is survived by his parents, Melvin and Pauline Ferrell.

Defendants have requested an Order from the Court granting judgment with respect to certain damages, including (1) economic/pecuniary damages; (2) damages for conscious pain and suffering of the Decedent; (3) claims for damages on behalf of Decedent's parents beyond those permissible under Okla. Stat. tit. 12 § 1053{ TA \l "Okla. Stat. tit. 12 § 1053" \s "Okla. Stat. tit. 12 § 1053" \c 7 }; and, (4) punitive damages.  Plaintiff does not intend to seek economic/pecuniary damages at the trial of this case and therefore concedes this proposition.  Additionally, Plaintiff is not seeking any damages on behalf of Decedent's parents beyond those permissible under Okla. Stat. tit. 12 § 1053.  The remaining propositions, however, are inappropriate issues for summary judgment as the legal standards and factual stance in this case establish they issues of material fact which must be determined at trial.

## II.    Plaintiff's Response to Defendants' Statement of Undisputed Facts[2]

**RDF1-4:**    Admitted for purposes of this motion but irrelevant as Plaintiff has conceded she is not seeking pecuniary damages, including lost earnings, stemming from the death of Mr. Ferrell.

**RDF5:**    Plaintiff admits that these two witnesses, neither of which are medical doctors or health care providers, and who arrived on the scene of the crash several minutes after it occurred, testified that they believed Mr. Ferrell did not survive the accident for any period of time.

**RDF6:**    Plaintiff admits that she, individually, testified that she does not know whether her husband suffered any conscious pain and suffering before dying in the crash with Mr. Dildine's semi-truck.

**RDF7:**    Plaintiff admits law enforcement officers, none of whom are medical doctors or health care providers, conveyed to Melvin Ferrell their belief that Gregory Ferrell was "killed instantly."

**RFD8-9:**    Plaintiff admits that Melvin Ferrell has certain rights of recovery under 12 O.S. 1053(B) as but no claim for damages apart from those delineated under that section are being sought herein.

---

[2] Plaintiff's Responses to Defendants' Statement of Uncontroverted Facts are designated by "RDF" and Plaintiff's additional facts will be designated as "PF."

### III. PLAINTIFF'S ADDITIONAL FACTS PRECLUDING SUMMARY JUDGMENT

**PF1:** The semi hit Mr. Ferrell's vehicle directly on the driver's side door in the T-bone collision. Ex 1, Tr. Benson, p. 71, ln 22 to p. 72, ln 18. The impact caused massive to the drivers' side of Mr. Ferrell's vehicle and he was still in the drivers' seat when officers arrived on the scene. Ex 2, Tr. Atkins, p. 79, ln 13 to p. 80, ln 1.

**PF2:** The data downloaded from the airbag control module in Mr. Ferrell's vehicle showed that one (1) second prior to the crash that resulted in his death, Mr. Ferrell's throttle was at 100%. Comparatively, two (2) seconds prior to the crash, Mr. Ferrell's throttle was at 42%. Ex 3, Data Download for Chevy Cobalt, FERRELL 158-160; Ex 1, Tr. Benson, p. 46, ln 25 to p. 48, ln 2; Ex 2, Tr. Atkins, p. 47, ln 7 to p. 48, ln 48 p. 13; p. 50 lns 5-21.

**PF3:** Mr. Ferrell's father, Melvin Ferrell, is seeking to recover allowable damages under 12 O.S. § 1053 for the death of his son. Ex 4, Tr. M. Ferrell, p. 14, lns 3-5.

**PF4:** Mr. Ferrell's mother, Pauline Ferrell, is seeking to recover allowable damages under 12 O.S. § 1053{ TA \s "Okla. Stat. tit. 12 § 1053" } for the death of her son. Ex 5, Tr. P. Ferrell, p. 28, ln 24 to p. 29, ln 1.

**PF5:** Defendant Dildine was on his cell phone at the time of the crash and had been on the phone for *several hours* while driving that afternoon. Ex 6, Tr. Dildine, p. 98, lns 16-22; p. 100, lns 12-15; p. 101, lns 4-8.

**PF6:** Defendant Dildine makes a habit of talking on his cell phone for long periods of time while driving. Ex 6, Tr. Dildine, p. 99, lns 13-23; p. 103, ln 12 to p. 104, ln 1.

**PF7:**  Defendant Dildine still regularly talks on his cell phone while driving his semi-truck.  Ex 6, Tr. Dildine, p. 247, lns 20-22.

**PF8:**  Federal regulations limit the amount of duty hours a driver such as Defendant Dildine may have over a certain number of days.  At the time of the crash, Defendant Dildine was limited to 70 duty hours over any eight-day period.  Ex 6, Tr. Dildine, p. 44, ln 23 to p. 45, ln 6.  Defendant Dildine knew at the time of the crash that he was required to follow federal regulations, including those related to logging duty hours.  Ex 6, Tr. Dildine, p. 121, lns 7-22.

**PF9:**  According to Defendant Dildine's handwritten duty logs, he had 9.25 hours of duty time available for Tuesday November 25, 2014, to remain in compliance with federal regulations.  Ex 7, BGF-78, Daily Log for 11/25/14; Ex 6, Tr. Dildine, p. 44, ln 23 to p. 45, ln 6.

**PF10:** According to Defendant Dildine's handwritten duty logs, he had 8.25 hours of driving time and 1.0 hours of "On Duty (Not Driving)" time on the day of the crash, November 25, 2014, for a total of 9.25 duty hours including the thirty minutes following the crash.  Ex 8, BGF-79.  By his own calculations, when he went "off-duty" on the day of the crash, Defendant Dildine was at the 70 hour maximum duty time limit.  Ex 6, Tr. Dildine, p. 230, ln 20 to p. 231, ln 2.

**PF11:** At the time of the crash, Defendant Dildine was an employee of Defendant BGF Global, LLC.  Ex 6, Tr. Dildine, p. 8, ln 14 to p. 9, ln 2.

**PF12:** Defendant BGF Global, LLC, maintained a company policy at the time of the crash that prohibited cell phone use while driving.[3] Ex 9, BGF-176; Ex 6, Tr. Dildine, p. 138, ln 20 to p. 141, ln 1.

**PF13:** The cell phone policy in place and applicable to Defendant Dildine at the time of the crash was implemented to "reduce exposure to accidents and injuries. . ." Ex 9, BGF-176. Defendant Dildine considered many of BGF's policies "generic" and believed he only had to comply "to a degree." Ex 6, Tr. Dildine, p. 120, lns 5-25.

**PF14:** Defendant Dildine, by his signature and that of BGF Owner Anton Filic, acknowledged that applicability of the "Interstate Truck Driver's Guide to Hours of Service" handbook at the time he was employed by Defendant BGF. Ex 10, BGF-233-237. That handbook states that the purpose of duty hour regulations is "to keep fatigued drivers off public roadways. . .to help reduce the *possibility* of driver fatigue." Ex 10, BGF-233-237.

**PF15:** "The hours-of-service regulations are found in Part 395 of the Federal Motor Carrier Safety Regulations. These regulations are developed and enforced by the Federal Motor Carrier Safety Administration, which is part of the United States Department of Transportation." Ex 10, BGF-233-237

**PF16:** The GPS Logs for Defendant Dildine's vehicle indicate multiple inaccuracies in his handwritten logs, including a discrepancy on Monday, November 24, 2014 where Mr.

---

[3] Plaintiff was forced to file a Motion to Compel in order to obtain Defendant BGF's Cell Phone Policy after repeated assertions by Defendants that such request sought irrelevant evidence that was not proportional to the needs of the case.

Dildine's logs indicate he stopped driving at 8:15pm but GPS shows his vehicle traveling at highway speeds until after 10pm. Ex 7, BGF-78; Ex 6, Tr. Dildine, p. 224, ln 15 to p. 227, ln 17; Ex 11, FLEETMATICS 8-22.

## IV.     ARGUMENT AND AUTHORITY
### A.  The Standard for Summary Judgment{tc \l2 "PROP. I - THE STANDARD FOR SUMMARY JUDGMENT}

In considering a Motion for Summary Judgment, the Court is to take the evidence in the light most favorable to the non-moving party, in this case the Plaintiff.  If there is any dispute as to the material facts in the case, then Summary Judgment must be denied. The Tenth Circuit has emphasized that upon summary judgment, the evidence, and thus, the issues, in *context*, not simply in segmented parts.  ***Maldonado v. City of Altus,*** 433 F.3d 1294, 1301 (10th Cir.2006){ TA \l "***Maldonado v. City of Altus,*** 433 F.3d 1294, 1301 (10th Cir.2006)" \s "Maldonado v. City of Altus, 433 F.3d 1294, 1301 (10th Cir.2006)" \c 6 } (quoting ***OShea v. Yellow Tech. Servs, Inc.***, 185 F.3d 1093, 1096 (10th Cir.1999){ TA \l "***OShea v. Yellow Tech. Servs, Inc.***, 185 F.3d 1093, 1096 (10th Cir.1999)" \s "OShea v. Yellow Tech. Servs, Inc., 185 F.3d 1093, 1096 (10th Cir.1999)" \c 6 }).

> . . . Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. FED. R. CIV. P. 56{ TA \s "Fed.R.Civ.Proc. 56" }(c). In applying this standard, all inferences arising from the record before us must be drawn ***and indulged*** in favor of the [nonmovant]. ***Stinnett v. Safeway, Inc.***, 337 F.3d 1213, 1216 (10th Cir. 2003){ TA \l "***Stinnett v. Safeway, Inc.***, 337 F.3d 1213, 1216 (10th Cir. 2003)" \s "Stinnett v. Safeway, Inc., 337 F.3d 1213, 1216 (10th Cir. 2003)" \c 2 } (internal quotations omitted). Credibility determinations [and] the ***weighing of the***

*evidence* . . . are jury functions, not those of a judge . . . **Id**. (internal quotations omitted). . .

**Plotke v. White**, 405 F.3d 1092, 1093-94 &1103 (10thCir., 2005){ TA \l "**Plotke v. White**, 405 F.3d 1092, 1093-94 &1103 (10thCir., 2005)" \s "Plotke v. White, 405 F.3d 1092, 1093-94 &1103 (10thCir., 2005)" \c 2 } (emphasis added). Summary Judgment is proper only when the moving party can show *beyond a reasonable doubt* that there is no material fact in dispute and *judgment* is appropriate as a matter of law. **Trainor v. Apollo Metal Specialties, Inc.,** 318 F.3d 976, 979 (10th Cir.2003){ TA \l "**Trainor v. Apollo Metal Specialties, Inc.,** 318 F.3d 976, 979 (10th Cir.2003)" \s "Trainor v. Apollo Metal Specialties, Inc., 318 F.3d 976, 979 (10th Cir.2003)" \c 2 **}.**

When a defendant moves for summary judgment, the judge must ask himself not whether he thinks the evidence favors one side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented. **Anderson v. Liberty Lobby, Inc.,** 477 U.S. 242, 252 (1986){ TA \l "**Anderson v. Liberty Lobby, Inc.,** 477 U.S. 242, 252 (1986)" \s "Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986)" \c 1 **}.** Most importantly, the court may not make credibility determinations or weigh the evidence, and must disregard all evidence favorable to the moving party that the jury is not required to believe. **Id.** After drawing all *inferences* in favor of the non-movant, if there is any dispute as to the material facts or the *inferences* from those facts, summary judgment must be denied. **Reeves v. Sanderson Plumbing Prod., Inc.,** 530 U.S. 133, 151 (2000){ TA \l "**Reeves v. Sanderson Plumbing Prod., Inc.,** 530 U.S. 133, 151 (2000)" \s "Reeves v. Sanderson Plumbing Prod., Inc., 530 U.S. 133, 151 (2000)" \c 1 **}.**

In this instance, with respect to the issue of Mr. Ferrell's conscious pain and suffering, there is disputed evidence that will be presented to the jury from which they must make a finding of fact. Further, with respect to punitive damages, Defendants have misconstrued the standards upon which a punitive damage instruction is based. The decision to instruct a jury on punitive should be made at the close of the evidence. In their motion, Defendants disregard the existence of admissible evidence from which a jury could find punitive damages appropriate. As such, Defendants' Motion should be denied on these two issues.

### B. PLAINTIFF WILL NOT PRESENT EVIDENCE OR TESTIMONY SUPPORTING A ECONOMIC/PECUNIARY DAMAGES CLAIM

Defendants request partial summary judgment in regards to any economic/pecuniary damages claim. Despite the language referenced by Defendants from Plaintiff's complaint, Plaintiff has since, on numerous occasions, notified Defendants that she is not making a claim for lost wages or loss of financial support as a result of the death of her husband, Gregory Ferrell.

Despite Plaintiff's continued assertions to Defendants that no claim for economic/pecuniary damages will be presented at trial, Defendants are disingenuous in their Motion alleging that Plaintiff "…has denied Defendants the opportunity to obtain any discovery…" regarding economic/pecuniary damages, and that "Defendants have been denied opportunity to obtain knowledge regarding the express request for economic/pecuniary relief…" Defs' Motion, pp. 6 and 12. Plaintiff Trudy Ferrell was asked numerous questions in her deposition regarding her husband's income and whether

he provided financial support to her or his parents. Mr. Ferrell's parents were asked similar questions in their depositions.

Mr. Ferrell was not employed at the time of the crash and his only source of income was benefits from Social Security as a result of his paraplegia disability. Those checks were cashed and used to pay his personal bills, such as his cell phone and auto insurance. As Plaintiff testified in her deposition, Mr. Ferrell supported himself and the finances in the marriage were "separate and distinct." There is no evidence in this case that Mr. Ferrell's death caused any pecuniary loss to Trudy Ferrell, his parents or any other individual. Therefore, Plaintiff will not present any claims for pecuniary/economic loss at the trial of this case.

### C. THERE IS EVIDENCE FROM WHICH A JURY COULD CONCLUDE THAT DECEDENT GREGORY FERRELL SUFFERED CONSCIOUS PAIN AND SUFFERING BEFORE AND FOLLOWING THE CRASH

Defendants' "undisputed facts" establish only that it is the opinion of some individuals that Mr. Ferrell did not survive for a significant length of time following the crash. Without expert testimony to establish to a reasonable degree of medical certainty Mr. Ferrell died upon impact, the jury must be allowed to reach their own conclusions as to his state immediately following the crash.

Further, Plaintiff is entitled to recover damages for the mental pain and anguish, or "pre-impact terror," that Mr. Ferrell experienced prior to the crash and his subsequent death. The Oklahoma wrongful death statute, Okla. Stat. tit. 12 § 1053{ TA \s "Okla. Stat. tit. 12 § 1053" }, states that a recoverable damage for the surviving spouse includes, "The mental pain and anguish suffered by the decedent…" Mental pain and anguish suffered by

a decedent can only occur prior to death.  Additionally, there is no requirement under the statute that the mental anguish come after any type of physical or traumatic impact. Therefore, there is a strong assumption that Oklahoma law allows for the recovery of monetary damages for mental pain and anguish of the decedent.

The Supreme Court of Oklahoma has permitted a plaintiff who suffered mental anguish as a result of observing injuries to another person to recover monetary damages. ***Kraszewski v. Baptist Medical Center of Oklahoma, Inc.***, 1996 OK 141, 916 P.2d 241, 247{ TA \l "***Kraszewski v. Baptist Medical Center of Oklahoma, Inc.***, 1996 OK 141, 916 P.2d 241, 247" \s "Kraszewski v. Baptist Medical Center of Oklahoma, Inc., 1996 OK 141, 916 P.2d 241, 247" \c 5 }.  The Court in *Kraszewski* upheld the Plaintiff's right to recover these damages "[e]ven though the actual injury may be slight in cases where the plaintiff is in risk of physical injury, the party's role is not that of a passive shocked witness" because "[w]hen one is subjected to the same fear and danger which causes injury to the other party, the person is a participant and a victim, not a bystander."  916 P.2d at 247-48.  Certainly, if a plaintiff may recover for the fear and danger in witnessing the event causing injury to another, a personal representative, on behalf of a decedent, may recover for the fear and suffering the decedent experienced in anticipation of the event that caused his fatal injuries.

While no Oklahoma case has specifically dealt with the recovery of pre-impact mental anguish, the majority of the courts that have considered the issue have allowed its recovery.  An analysis of how the issue is treated in various jurisdictions is found in ***Beynon v. Montgomery Cablevision Ltd. P'ship***, 351 Md. 460, 504, 718 A.2d 1161, 1183 (1998){ TA \l "***Beynon v. Montgomery Cablevision Ltd. P'ship***, 351 Md. 460, 504, 718

A.2d 1161, 1183 (1998)" \s "Beynon v. Montgomery Cablevision Ltd. P'ship, 351 Md. 460, 504, 718 A.2d 1161, 1183 (1998)" \c 9 }. Damages for pre-impact fright, may be awarded "where a decedent experiences great fear and apprehension of imminent death before the fatal physical impact" and only if the damages are "capable of objective determination." *Id.* In *Beynon*, the Court of Appeals held that an objective determination of the decedent's apprehension of imminent death was demonstrated when the decedent slammed on his brakes and created more than seventy-one feet of skid marks in fear of an impending automobile crash. *Id.* at 507, 718 A.2d 1161. Similar evidence is present in this case clearly demonstrating, objectively, Mr. Ferrell's fear of imminent death.

As the Fifth Circuit said in *Haley v. Pan Am. World Airways, Inc.*, 746 F.2d 311, 314-15 (5th Cir. 1984){ TA \l "*Haley v. Pan Am. World Airways, Inc.*, 746 F.2d 311, 314-15 (5th Cir. 1984)" \s "Haley v. Pan Am. World Airways, Inc., 746 F.2d 311, 314-15 (5th Cir. 1984)" \c 2 } (applying Louisiana law), the court said that while "the usual sequence is impact followed by pain and suffering, we are unable to discern any reason based on either law or logic for rejecting a claim because . . . this sequence was reversed. We will not disallow the claims for this item of damages on that ground."

The facts of the case at bar closely mirror those in *Monk v. Dial*, 212 Ga. App. 362, 441 S.E.2d 857 (1994){ TA \l "*Monk v. Dial*, 212 Ga. App. 362, 441 S.E.2d 857 (1994)" \s "Monk v. Dial, 212 Ga. App. 362, 441 S.E.2d 857 (1994)" \c 9 }. In *Monk*, the plaintiff was killed instantaneously when his vehicle was struck by a tractor-trailer owned by the defendant. After plaintiff received a jury verdict and judgment for pain and suffering damages, defendant appealed and argued that there was no evidence to support a judgment for

decedent's pain and suffering since death was instantaneous. The court held that, because decedent's vehicle veered shortly before the collision, the jury could infer that the decedent was aware of the impending crash and could consequently "extrapolate the probable mental state of decedent in that last moment of consciousness." Additionally, the court found no requirement that physical injury precedes mental pain and suffering.

Plaintiff's additional undisputed facts establish that the throttle on Mr. Ferrell's vehicle went from 42% to 100% immediately prior to the crash. PF2. It is also undisputed that the semi-truck hit Mr. Ferrell on the driver's side. PF1. The jury could certainly draw the reasonable inference that Mr. Ferrell hit the throttle in an attempt to get out of the way as soon as he saw Mr. Dildine was going to burst through the intersection. The jury will certainly find that Gregory Ferrell knew that an impact was going to occur with the semi-tractor and trailer driven by Defendant Dildine. Based on this objective data that is undisputed, the jury is entitled to infer that Mr. Ferrell was aware of the impending crash and was attempting to accelerate away from the semi's path.

Despite Defendants' inevitable attempts at confusing the jury with this evidence, there are only two possible explanations for Mr. Ferrell's throttle to be at 100% one second prior to the impact that would result in his death: either Mr. Ferrell was committing 'suicide by semi' or, he was desperately attempting to get out of the way of the semi. There is absolutely no indication that Mr. Ferrell intended to commit suicide and the far more likely explanation for the 100% throttle is the latter. Regardless, undisputed facts provide a basis from which the jury could draw more than one inference, as unlikely as one of them may be.

Conscious pain and suffering, as contemplated by 12 O.S. § 1053{ TA \s "Okla. Stat. tit. 12 § 1053" }, allows the jury to consider both pre and post trauma, pain and suffering. The factual evidence establishes that Mr. Ferrell's throttle skyrocketed just before Mr. Dildine's semi-truck crashed into his car. The jury must be allowed to draw their own reasonable inference as to why that was, thus, summary judgment regarding damages for conscious pain and suffering of the Decedent is improper.

## D. DECEDENT'S PARENTS MAINTAIN CLAIMS FOR DAMAGES PERMISSIBLE UNDER OKLAHOMA LAW

Okla. Stat. tit. 12 § 1053{ TA \s "Okla. Stat. tit. 12 § 1053" } permits the parents of decedents to recover monetary damages for the grief and loss of companionship suffered as a result of decedent's death. After reading Defendants' Motion, Plaintiff is somewhat unclear as to Defendants' position on this issue. Defendants request judgment "with respect to any claim for damages by the decedent's parents outside of grief and loss of companionship," then also argue that "no claim has been filed on behalf of the Decedent's parents," and "No attempts have been made to amend this cause of action to include any damages on behalf of the Decedent's parents." Defs' Motion, p. 9.

If Defendants' maintain that Mr. Ferrell's surviving parents cannot bring any claim for damages other than those permissible pursuant to § 1053, Plaintiff has no issue with such. Indeed, Plaintiff does not intend to seek damages for the parents beyond those permissible under Oklahoma law. However, if Defendants are asking this Court to bar <u>any</u> recovery for Decedent's parents because, as argued in their brief, "no claim has been filed…," Plaintiff strongly disputes Defendants' assertion.

As Defendants point out, Plaintiff's Petition listed recoverable damages, including "grief and loss of companionship of his surviving parents." Decedent's parents have been involved in this case throughout written discovery and presented for deposition on December 22, 2016. Both of Mr. Ferrell's parents testified that they are making a claim for damages allowable under § 1053{ TA \s "Okla. Stat. tit. 12 § 1053" }. PF3-4. Defendants questioned Mr. and Mrs. Ferrell concerning these damages, including *inter alia,* their relationship with their son.

As shown, Defendants have had ample notice throughout this case that Decedent's parents are maintaining valid claims allowable under Oklahoma law. Therefore, to the extent Defendants are seeking summary judgment for any claims for damages that may be brought by Mr. Ferrell's parents, such relief is inappropriate. However, as previously stated, Plaintiff is not asserting any claims for Decedent's parents other than those permitted by § 1053.

### E. PLAINTIFF WILL PRESENT EVIDENCE THAT SUPPORTS A JURY INSTRUCTION ON PUNITIVE DAMAGES

The Supreme Court of Oklahoma has held that the trial court is required to submit punitive damages to the jury and to give jury instructions on that issue when there is any evidence to support an inference either of gross negligence or reckless disregard/indifference for the safety of others. ***Hightower v. Kansas City S. Railroad Co.***, 2003 OK 45, ¶ 38 n. 28, 70 P.3d 835{ TA \l "***Hightower v. Kansas City S. Railroad Co.***, 2003 OK 45, ¶ 38 n. 28, 70 P.3d 835" \s "Hightower v. Kansas City S. Railroad Co., 2003 OK 45,  38 n. 28, 70 P.3d 835" \c 5 } (citing ***Shuman v. Laverne Farmers Coop***, 1991 OK CIV

APP 2, 809 P.2d 76{ TA \l "***Shuman v. Laverne Farmers Coop***, 1991 OK CIV APP 2, 809

P.2d 76" \s "Shuman v. Laverne Farmers Coop, 1991 OK CIV APP 2, 809 P.2d 76" \c 6 }).  As

such, it is only where there is no evidence whatsoever including inferential and

circumstantial that he court may refuse to instruct the jury on exemplary damages after the

evidence is in.  ***Floyd v. Dodson***, 1984 OK CIV APP 57, ¶ 15, 692 P.2d 77{ TA \l "***Floyd***

***v. Dodson***, 1984 OK CIV APP 57, ¶ 15, 692 P.2d 77" \s "Floyd v. Dodson, 1984 OK CIV

APP 57,  15, 692 P.2d 77" \c 6 }.

Under Oklahoma law, a plaintiff may recover punitive damages when the conduct

of the defendant evinces reckless disregard for the rights of others or defendant has acted

intentionally and with legal malice or has engaged in conduct that is life threatening.  23

Okla. Stat. tit. § 9.1{ TA \l "23 Okla. Stat. tit. § 9.1" \s "23 Okla. Stat. tit. § 9.1" \c 7 }.

"'Reckless disregard' means the defendant was aware or indifferent that its conduct put

others at an unnecessary risk of injury."  ***Scribner v. Hillcrest Medical Center***, 1992 OK

CIV APP 117, ¶ 12, 866 P.2d 437{ TA \l "***Scribner v. Hillcrest Medical Center***, 1992 OK

CIV APP 117, ¶ 12, 866 P.2d 437" \s "Scribner v. Hillcrest Medical Center, 1992 OK CIV APP

117,  12, 866 P.2d 437" \c 6 }.

The Oklahoma Supreme Court has recognized that for purposes of punitive damages

"a person may commit such willful acts in reckless disregard of another's rights that malice

may be inferred."  ***Slocum v. Phillips Petroleum Co.***, 1983 OK 112, ¶ 17, 678 P.2d 716{

TA \l "***Slocum v. Phillips Petroleum Co.***, 1983 OK 112, ¶ 17, 678 P.2d 716" \s "Slocum v.

Phillips Petroleum Co., 1983 OK 112,  17, 678 P.2d 716" \c 5 } (citing ***Oden v. Russell***, 1952 OK

414, 251 P.2d 184){ TA \l "***Oden v. Russell***, 1952 OK 414, 251 P.2d 184)" \s "Oden v. Russell,

1952 OK 414, 251 P.2d 184)" \c 5 **}**.  Malice may be inferred when a person commits willful acts in reckless disregard of another's rights or safety.  *Id*.  Malice itself is defined by the Supreme Court in OUJI 5.6 as "*<u>Either</u>* hatred, spite, or ill will, <u>***or***</u> <u>else the doing of a wrongful act intentionally without just cause or excuse</u>."  The Supreme Court of Oklahoma made clear in ***Graham v. Keuchel***, 1993 OK 6, 847 P.2d 342**{** TA \l "***Graham v. Keuchel***, 1993 OK 6, 847 P.2d 342" \s "Graham v. Keuchel, 1993 OK 6, 847 P.2d 342" \c 5 **}**, 362 that:

> The intent in willful and wanton misconduct is *not an intent to cause the injury; it is an intent to do an act* – or the failure to do an act – in reckless disregard of the consequences and under such circumstances that *a reasonable man would know, or have reason to know, that such conduct would be likely to result in substantial harm to another.*

*Id*. (emphasis added).

<u>It is important to emphasize that malice is the doing of a wrongful act intentionally without just cause or excuse</u>.  As the Oklahoma Supreme Court noted, the requisite intent is to do an act, or the failure to do an act.  The requisite intent is not to cause the injury.

In the case at bar, there is ample evidence to support a punitive damages instruction in this case.  Plaintiff believes that the evidence at the trial of this case will show that Defendant Dildine entered the intersection on a red light, while talking on his cell phone in violation of his employer's company policy, and while in violation of federal regulations that require truckers to stop driving after reaching seventy (70) hours of on-duty time in the preceding eight (8) days.  When such evidence is presented at the trial of this case, the jury may certainly determine that Defendant Dildine acted in reckless disregard of another's rights at the time of the crash by driving while distracted and fatigued, even if he

did not intend to cause the death of Mr. Ferrell.

sClearly, Defendant BGF adopted a policy that instructed drivers "not talk on a cell phone until they are parked at a safe and legal location" in order to "reduce exposure to accidents and injuries." Admittedly, Defendant Dildine was not compliant with BGF's cell phone policy at the time of this crash. In fact, Defendant Dildine was having a three-way conversation and had been for over two hours when the crash occurred. This was not a rare occurrence for Defendant Dildine. Defendant Dildine testified in his deposition, and his phone records support his testimony, that he made a habit of talking on the phone while he was driving.

Additionally, Defendant Dildine was subject to Federal Motor Carrier Safety Administration regulations regarding on-duty time. Regulations regarding hours of service are in place to prevent driver fatigue and reduce crashes. One such regulation requires drivers to stop driving if they have been on-duty for a total of seventy (70) hours in the preceding eight (8) days. By his own admission, Defendant Dildine was at 69.5 hours when the crash occurred. However, Plaintiff strongly believes that when the jury at the trial of this case compares Defendant Dildine's own handwritten logs with the GPS data acquired on his semi-tractor, it will be apparent that Defendant Dildine's logs were falsified and that he was well in excess of the seventy-hour rule at the time of the crash. In short, if Defendant Dildine had complied with federal regulations, he would have never driven into the State of Oklahoma on November 25, 2014.

Okla. Stat. tit. 23 § 9.1{ TA \s "23 Okla. Stat. tit. § 9.1" } provides seven (7) factors that the jury may consider when awarding punitive damages. Many of the factors listed

apply directly to the factual circumstances of this case, including the seriousness of the hazard to the public arising from Dildine's misconduct, the duration of Dildine's misconduct and any concealment of it, and Dildine's conduct upon discovery of the misconduct. As previously noted, Plaintiff strongly believes that Defendant Dildine consciously falsified his driver logs and knowingly violated federal regulations on hours of service for financial gain. In addition to driving while fatigued, Defendant Dildine consciously violated his employer's policy on cell phone usage and chose to drive while not fully focused on the road. These acts of misconduct caused a serious threat to the public. Further, even though the crash killing Mr. Ferrell occurred while Defendant Dildine was talking on the phone while driving, he testified that he still talks on his cell phone today when he drives.

Plaintiff believes that the evidence will show Defendant Dildine was intentionally violating company policy by talking on his cell phone for hours leading up to the crash, as well as intentionally falsifying his driver logs to evade federal regulations. Therefore, summary judgment on punitive damages is inappropriate.

## V.     CONCLUSION

As detailed throughout this brief, summary judgment is improper in regards to the conscious pain and suffering of Mr. Ferrell, as well as punitive damages. Summary judgment is also improper to the extent Defendants argue to preclude any and all claims of Mr. Ferrell's parents. These damages must be presented to and decided by the trier of fact at the trial of this case.

WHEREFORE, Plaintiff respectfully requests that Defendants' Motion for Partial Summary Judgment be denied.

Respectfully submitted,

 s/ Andy J. Campbell
L. Ray Maples, II, OBA #18586
Glendell D. Nix, OBA #13747
Nicole R. Snapp-Holloway, OBA #18472
Andy J. Campbell, OBA #30512
**MAPLES, NIX & DIESSELHORST, PLLC**
15401 N. May Avenue
Edmond, Oklahoma 73013
T:  (405) 509-2000
F:  (405) 513-5005
ray@mndlawfirm.com
glendell@mndlawfirm.com
nicole@mndlawfirm.com
andy@mndlawfirm.com
**ATTORNEYS FOR PLAINTIFF**


**Certificate of Service**

I hereby certify that on May 30, 2017, I electronically transmitted the attached document to the Clerk of Court using the ECF system for filing.  Based on the records currently on file, the Clerk of Court will transmit a Notice of Electronic Filing to the following ECF registrants:

 David C. Senger
 david@csmlawgroup.com


s/Andy J. Campbell